898 F.2d 145
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Larry Dornell HARRISON, Petitioner-Appellant,
v.
M.L. STALLINGS; Hoyle A. Hartsoe, Defendants-Appellees.
 No. 88-6877.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 8, 1989.
Decided: Feb. 23, 1990.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, District Judge. (CA-87-471-CRT)
 George K. Walker (Wake Forest University School of Law, on brief), for appellant.
 Kenneth Davis Bell (Womble, Carlyle, Sandridge & Rice, on brief), for appellees.
 E.D.N.C.
 AFFIRMED.
 Before DONALD RUSSELL and MURNAGHAN, Circuit Judges, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal is from the action of the court below dismissing the complaint filed by the plaintiff/appellant [hereinafter "plaintiff"] under 42 U.S.C. Sec. 1983 (1982). The district court disposed of certain of the claims of the plaintiff on motions to dismiss, and the remainder of the claims on motions for summary judgment, finally entering an order disposing of the case on November 18, 1988.
 
 
 2
 The plaintiff filed his initial pro se complaint in the court below on June 1, 1987. Thereafter, an amended complaint was filed on October 5, 1987. In the initial complaint, the allegations supporting the Sec. 1983 suit were as follows:
 
 
 3
 1. That the plaintiff had been held in the detention center with no access to recreation or any "excess" to outside, alleging that this was against the plaintiff's well being.
 
 
 4
 2. That the plaintiff was denied access to religious counsel.
 
 
 5
 3. That the defendants censored plaintiff's reading material.
 
 
 6
 4. That the defendants censored visitation to his immediate family or attorney.
 
 
 7
 5. That plaintiff was allowed no access to court "unless warranted by court official or attorney."
 
 
 8
 In the amended complaint, the plaintiff asserts that he was not permitted or was denied the following things:
 
 
 9
 "A. Denied more than one hour visit per week;
 
 
 10
 B. Denied any outdoor or indoor recreation;
 
 
 11
 C. Denied permission to smoke in the visiting room;
 
 
 12
 D. Denied any access to reading materials;
 
 
 13
 E. Denied any access to a law library, no notary services, no pens for legal work;
 
 
 14
 F. Denied any access to coffee (addiction to caffeine--withdrawal symptoms);
 
 
 15
 G. Denied access of use of pillow and pillowcase;
 
 
 16
 H. Permitted only limited or restricted visits with family members and friends, limited to one hour per week;
 
 
 17
 I. Permitted only an inadequate food allowance by a total daily intake of only 1000 calories; inadequate milk-- 1/2 pint per day.
 
 
 18
 J. Denied access to adequate heat by being provided with only one jumpsuit with underwear; with the air conditioning turned high to fit the fully clothed jail officials; plaintiff caught a cold several times.
 
 
 19
 K. Permitted no more than $5.00 per week for cigarettes, food, hygiene items."
 
 
 20
 With this somewhat confused set of complaints, the court looks now at the fact pattern underlying them disclosed in the record.
 
 
 21
 On September 30, 1986, the plaintiff was charged on a warrant of arrest with committing an assault on an individual with a knife, a deadly weapon, by cutting with intent to kill, which assault resulted in serious injury. The plaintiff was arrested on this warrant on September 30, 1986, and was remanded to the Halifax County Jail. There, on October 1, 1986, the court undertook to appoint counsel for the plaintiff, naming first W.F. Dickens, Esquire, but this person withdrew because of a conflict of interest. Thereafter on October 3, 1986, M. Glenn Rollins, Esquire, was appointed as counsel for the plaintiff, the order of assignment stating that the plaintiff is "entitled to the services of counsel as contemplated by law...." No further reference to counsel is contained in the Joint Appendix or in the Stipulation Supplementing the Record on Appeal [hereinafter together referred to as "Joint Appendix"] filed by leave of this court, and on agreement of counsel for the parties, until the time of trial in the state court on May 15, 1987. At that time, the order of judgment and commitment indicates that the attorney for Mr. Harrison was James F. Livermon, Jr., Esquire. Nothing in the Joint Appendix indicates a reason for any change in counsel, but trial counsel was not one of the counsel initially appointed to represent the plaintiff.
 
 
 22
 So far as the record discloses, the plaintiff was represented by either Mr. Rollins or Mr. Livermon from the time of his incarceration until the completion of the trial. From October 1, 1986, to May 15, 1987, plaintiff was a pre-trial detainee, so that his complaints in this time period must be viewed under the proscriptions of the Fourteenth Amendment as to denial of due process. From May 15-19, 1987, the plaintiff was confined in the jail as a prisoner after his conviction, before being transferred to the state prison system, thus invoking the proscriptions of the Eighth Amendment as to cruel and unusual punishment. While this distinction is important in some cases, it is not of major importance here, granted the manner in which the evidence was developed.
 
 
 23
 The plaintiff filed an affidavit in support of his amended complaint, and in that affidavit made specific allegations to the effect that the food was cold and individual servings were insufficient, he was denied notary services, he was not allowed exercise periods, he was not allowed enough money to buy personal hygiene products, he was not allowed religious material other than the Bible, and finally that the jail was constantly cold. This affidavit was filed in response to the motion of the defendants to dismiss the action.
 
 
 24
 In looking at the complaints, the court below reasoned, on the basis of Bolding v. Holshouser, 575 F.2d 461 (4th Cir.1978), that the plaintiff's allegations of inadequate heating could state a viable constitutional claim. The court therefore denied the motion to dismiss as to this claim. The court ruled on all the remaining claims in the following fashion. The district court held that the claims as to cold food and insufficient quantities could not withstand the motion to dismiss, particularly where the plaintiff made no factual allegation of adverse effects caused by the condition of the food, relying on Sweet v. South Carolina Dep't of Corrections, 529 F.2d 854 (4th Cir.1975).
 
 
 25
 Similarly, the plaintiff's claims relating to jail policy which prevented him from receiving funds and the prohibition against getting any exercise were dismissed, principally on the ground that the plaintiff had not alleged any harm resulting from those conditions. The court below dealt in the same fashion with the matter of denial of access to a notary. However, in the allegation relating to denial of religious materials other than the Bible, the court held that the allegation was sufficient to withstand the motion for dismissal, and therefore denied the motion on that issue. Thus, the actions on the initial motion to dismiss left the plaintiff with two viable claims, namely, the matter of the heat in the prison, and the matter of denial of religious materials.
 
 
 26
 At the time of ruling on the various parts of the motion to dismiss, the court had before it the motion, a supporting brief filed by defendants, a "Memorandum of Law in Support of Plaintiff's Contentions" submitted "in answer to defendants' Motion to Dismiss," and plaintiff's "affidavit in Opposition to Defendant's [sic] Motion to Dismiss."
 
 
 27
 Ordinarily, submission of such materials outside the perimeters of the complaint would require the conversion of the motion to dismiss to a motion for summary judgment. Here, however, the "Memorandum of Law" and the "Affidavit" did not more than repeat all or some of the allegations of the complaint; no new or different material is to be found in these pleadings. While the language of some of the allegations in these later pleadings varies somewhat from the language of the complaint and the amended complaint, the substance in all is the same. The record thus discloses that in fact the court below considered what amounted to the allegations of the complaint. A purist might insist that the order of the court be called an order on a motion for summary judgment, but no error prejudicial to the plaintiff can be found in what the purist might call a misnomer, if in the facts of this case it is indeed a misnomer.
 
 
 28
 Thereafter, various affidavits were filed by the defendants, and interrogatories were propounded to the plaintiff. On the basis of these subsequent matters, the defendants then filed motions for summary judgment on the remaining issues. The various responses to the affidavits and answers to the interrogatories were filed by the plaintiff, and the district court then found that two reports made by the North Carolina Department of Human Resources as of August 26, 1986, and February 24, 1987, indicated that the heating system was working satisfactorily, and "was achieving results in compliance with the requirement of the Department of Human Resources" maintaining temperatures during the time of plaintiff's incarceration between 72 and 78 degrees Fahrenheit. The district court found that plaintiff failed to counter or rebut the contention that the temperature was kept between 72 and 78, and accordingly granted the motion for summary judgment as to the heating claim.
 
 
 29
 As to the plaintiff's allegation of denial of access to religious material, the district court overruled the motion for summary judgment, indicating that as of that time the contentions of the plaintiff and the defendants indicated a genuine issue of material fact. However, the court indicated that the defendants might renew their motion after further discovery was had.
 
 
 30
 The initial complaint, filed on June 1, 1987, stated "Plaintiff has had no excess [sic] to religious council [sic]." On October 5, 1987, an amended complaint was filed, which contained no reference to denial of access to religious counsel. In the memorandum of law and affidavit filed (see discussion supra ), in the heading "Religious Materials" the plaintiff makes brief reference to this point, stating that "Application of principle may permit inmates to gather for group religious services, to consult ministers of their faith, to possess religious books, to maintain personal appearance, and to have nutritionally adequate diet in conformity with religious practices."
 
 
 31
 No further reference to this claim is found in the record before the district court up to the time of the court's decision on the motion to dismiss on March 4, 1988, which dismissed all of the claims of plaintiff, excepting only the claim of not being allowed religious reading materials and of not having adequate heat. As noted supra, this last claim was later dismissed on the partial granting of the later motion for summary judgment.
 
 
 32
 Not until the filing on June 8, 1988, of plaintiff's "Affidavit in Opposition to Defendants Motion to Dismiss and/or Summary Judgment" did plaintiff address the issue of denial of religious counsel. In its order of June 28, 1988, the district court found that plaintiff's presentation of alleged facts in support of this claim in his "Affidavit in Opposition" came too late to keep this claim alive, it having been dismissed by the action on the motion to dismiss on March 4, 1988. Finding that nowhere in the pleadings until June 8, 1988, was there to be found any factual basis for this claim, the district court therefore declined to reinstate this claim.
 
 
 33
 At this stage, the plaintiff's claim remained one of denial of religious reading material. All other claims in the complaints had been decided adversely to the plaintiff.
 
 
 34
 Thereafter, on September 2, 1988, the defendants renewed their motion for summary judgment following interrogatories to plaintiff and his answers. In the defendants' renewed motion for summary judgment, reliance was had on the discovery which had taken place immediately before the filing of that motion. The plaintiff was allowed until November 2, 1988, to respond, but no timely response was filed by him. The answers to interrogatories made by plaintiff clearly revealed that he had been provided with a Bible by the jail personnel. The court below, finding that jailers have no duty to provide such materials in the first instance, relying on Saunders v. Patseavouras, 808 F.2d 835 (4th Cir.1986) (unpublished), concluded that there was no evidence that the jailers had denied possession of such materials to the plaintiff. The court concluded that the plaintiff had been afforded a reasonable opportunity to practice his religion and therefore found no infringement on any First Amendment rights.
 
 
 35
 Upon making these final findings, the court below dismissed the complaint.
 
 
 36
 A comment is appropriate concerning the allegation of denial of access to the law library or to legal resources while the plaintiff was a pre-trial detainee in the jail. So far as the record discloses, the plaintiff was represented throughout the period of his confinement in that jail, either by Mr. Rollins or Mr. Livermon. Nothing in the record indicates any demand by the plaintiff to these attorneys which was not followed up by them, nor can the court perceive from a careful perusal of the record any form of failure of this sort on the part of appointed counsel. The plaintiff's brief speculates or surmises that the plaintiff's request for a notary so as to file a complaint against a former attorney could have related to one of the two attorneys provided to the plaintiff. This surmise or speculation is difficult to support, when it appears from the stipulation supplementing the record on appeal that the plaintiff had at least one other brush with the law at about the same time as his arrest for assault with a deadly weapon, in that he was also arrested on October 1, 1986, for larceny of a motor vehicle. Nothing appears of record to show whether separate counsel was appointed for this matter, but it weakens the surmise or the speculation that the desire for a notary was brought about by an interest in pursuing a complaint against one of the two appointed counsel in this case. In brief, from the record, it appears that the plaintiff was afforded appointed counsel throughout the time of his confinement in the Halifax County Jail.
 
 
 37
 Following a very careful perusal of the full Joint Appendix, the briefs of the parties, and arguments of counsel, the court perceives no error in the actions of the court below, and the district court is therefore
 
 
 38
 AFFIRMED.