Rev. Willie JOHNSON, Plaintiff,

v.

Jon OZMINT, Director of South Carolina Department of Corrections, Defendant.

C.A. No. 0:04–1687–PMD.

United States District Court, D. South Carolina.

June 2, 2006.

Willie Johnson, Ridgeville, SC, pro se.

Daniel R. Settana, Jr., Stephen L. Hall, McKay Cauthen Settana Martin and Addison, Columbia, SC, for Defendant.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon Magistrate Judge's recommendation (1)

that summary judgment be granted to Defendant Jon Ozmint ("Ozmint") on Plaintiff Rev. Willie Johnson's ("Johnson") 42 U.S.C. § 1983 claims, (2) that Johnson's unlawful continued confinement claim be dismissed without prejudice, and (3) that Johnson's remaining state law claims be remanded back to state court. The record contains the report and recommendation of the United States Magistrate Judge ("the R & R"), which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A party may object, in writing, to a R & R within ten days after being served with a copy of that report. § 28 U.S.C. 636(b)(1). Johnson has filed timely objections to the R & R.

## I. BACKGROUND

Johnson, an inmate serving a life sentence for murder with the South Carolina Department of Corrections, is proceeding *pro se.* On April 22, 2004, Johnson filed this action in the South Carolina Richland County Court of Common Pleas, alleging violations of the South Carolina Tort Claims Act, S.C.Code Ann. § 15–78–10, et seq., and violations of the Eighth and Fourteenth Amendments of the United States Constitution. The named defendant Jon Ozmint, the Director of South Carolina Department of Corrections, removed this case to federal court pursuant to 28 U.S.C. § 1331. Ozmint filed a motion for summary judgement pursuant to Fed.R.Civ.P. 56(c), on October 27, 2004. As Johnson is proceeding *pro se,* a *Roseboro* order was entered by the Court on November 2, 2004, advising Johnson of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Johnson later filed a motion to amend his Complaint on October 28, 2004, seeking to add a fourth cause of action challenging the lawfulness of his confinement. Ozmint consented to Johnson's motion, filed a supplemental answer,

and then filed a motion to dismiss with regard to this new cause of action on November 18, 2004. Johnson thereafter filed a memorandum in opposition to Ozmint's motions on December 15, 2004, following which both parties also filed reply memoranda.

### A. Johnson's Conditions of Confinement

Johnson alleges in his verified Complaint that he was put on "lock-down status" from August 23 through August 26, 2003, and again from March 24, 2004 through March 27, 2004, during which time he was held under conditions which violated his rights secured by the Eighth Amendment to the Constitution. (R & R at 2.) Specifically, Johnson alleges that as a result of his "lock-down status," he was not provided with adequate food, water, opportunity to exercise, and was denied shower privileges. *(Id.* at 2.) Johnson also alleges that the prison was improperly placed on lock-down status on March 31, 2004 during a "shake down" of the institution in order to locate a knife stolen from the kitchen. *(Id.)* Further, Johnson alleges that his right to equal protection secured by the Fourteenth Amendment to the Constitution was violated when his request to be assigned to the MacDougal Correctional Institution was denied, and also alleges that his prison assignment was contrary to the prison classification policy effective January 1, 2004. *(Id.* at 3.)

In support of his motion for summary judgment, Ozmint submitted an affidavit from Margaret Allen, a registered nurse at the Lieber Correctional Institution. Allen attests that she reviewed Johnson's records and he requires no special dietary needs nor requirements which would necessitate special meals or other nutritional supplements. Allen further attests that Johnson has only been seen by medical

personnel at Lieber (where Johnson was housed during the relevant time period) on two occasions, the first being for dental treatment on July 23, 2003 and the second on November 12, 2003 when he signed a refusal for a flu shot. At no time during his incarceration at Lieber did Johnson show signs of malnutrition or weakness related to insufficient meals, or related to any other medical condition. (R & R at 4.)

Ozmint also submitted an affidavit from Marcia Fuller, who is the registered dietician and clinical nutritionist for the Department of Corrections. Fuller attests that she is responsible for creating the menu for lock-down periods at all SCDC facilities, and that on July 7, 2003 she issued a memorandum which provided a detailed menu for lock-down periods. That menu was sent to all food service specialists within the Department. Fuller attests that this memorandum specified what was to be served to every inmate for breakfast, lunch, and dinner. When creating the menu, Fuller considered both the nutritional and caloric needs of the average sedentary male inmate, as well as the requirement that the meals be easy to prepare since the staff at the institution under lock-down would not have inmate assistance in preparing meals. Fuller attests that this menu provides approximately 2,097 calories per day, over the required 2,000 calories required of the average male, and that this menu meets all USDA nutritional requirements. Deborah Myers, the Director of Food Service at the Lieber Correctional Institution, submitted an affidavit attesting that during the period between August 23 and August 26, 2003, and March 24 and March 27, 2004, she oversaw the preparation of bag meals and attested that each meal prepared for the inmates satisfied the requirements of the July 7 memorandum. (R & R at 4–5.)

Ozmint submitted an affidavit from Alfred Jenkins who is a sergeant at the Lieber Correctional Institution. He attests that on August 23, 2003 he witnessed a major disturbance which resulted in a lock-down of the prison. On that date, Jenkins observed several inmates fighting and one inmate attacking another with a homemade shank. In the process of breaking up the fight, Jenkins was stabbed several times. Jenkins attests that the disturbance was major and that it appeared to him that the fight was planned, adding to the volatility and level of security threat. (R & R at 5.)

Ozmint submitted another affidavit in support of summary judgment from Stan Burtt, Warden of Lieber Correctional Institution. As Warden, he is responsible for determining the need for institutional lock-downs. Burtt attests that following the disturbance on August 23, 2003, nearly twenty-five homemade weapons were found in the yard, and he determined that the disturbance was caused by tension between upstate and low country inmates related to suspected drug activity. As a result of the disturbance, Burtt put the facility on lock-down, confining each prisoner to his cell for twenty-four hours a day. Burtt attests that the lock down remained until August 26, 2003 and was conducted pursuant to SCDC lock-down policy. (R & R at 6.)

Burtt attests that on March 24, 2004 he became aware that a knife was missing from the cafeteria. He then placed the facility on lock-down in order to locate the knife. Each inmate was required during this time to be in his cell twenty-four hours a day. The March 24, 2004 lock-down was also conducted pursuant to SCDC lockdown policy and procedure, and remained in effect until March 27, 2004. (R & R at 6.)

During the lock-down period, Burtt attests that all inmates were served three bag meals per day pursuant to the South Carolina Food Service Branch memorandum issued by Marcia Fuller on July 7, 2003. Due to security concerns, no inmate was permitted to leave his cell during the lock-down period. All inmates were provided with drinking and bathing water at all times during the lock-down period. (R & R at 7.)

In response to Defendant's motions, Johnson submitted an affidavit wherein he generally complains that if Ozmint's employees would have done a better job, there would not have been a riot at the prison. Moreover, Johnson claims that Warden Burtt waited too long before locking-down the prison when the knife was reported missing from the kitchen. Johnson also complains of having been slandered by a "Lt. Smalls," who fabricated an incident report against him. Johnson asserts further that the bag meals received by inmates during these lock-downs did not meet the requirements of the Eighth Amendment, or the standards of the United Nations. Specifically, Johnson asserts, "[t]he only way one can receive a daily intake of calories is with something sweet, and there was nothing sweet served during lock-down status." (R & R at 7.)

### B. Johnson's Classification and Placement

Johnson alleges in his verified Complaint that he was housed at MacDougal Correctional Institution for eleven years. He claims that he was transferred to Evans Correctional Institution "without probable cause" and "causing great hardship upon his family and wife." Since that time, Johnson has requested a transfer back to MacDougal, but his request was denied. Johnson alleges that the Defendants placed "stipulations" on the SCDC policy, disallowing transfers except to Allendale and Kershaw Correctional Institutions. Johnson alleges that this stipulation "is very discriminatory against the plaintiff and violates his equal protection."

In response to these allegations, Ozmint submitted an affidavit from James Sligh who is the Division Director for Classification and Inmate Records. Sligh attests that within the SCDC inmate classification system, there are three security levels of classification. Level 3 ("L3") is assigned to the most serious security risks, Level 2 ("L2") is an intermediate assignment to which L3 inmates can be advanced, and Level 1 ("L1") is the minimum classification, reflecting a low security risk. Sligh attests that each institution is assigned a level of security which is consistent with the inmate classification system, and that every inmate is subject to reclassification within the system based on a number of factors, including their actions while incarcerated. (R & R at 3, 4.)

Sligh attests that, not withstanding Johnson's life sentence for murder, he was housed at the MacDougal Correctional Institution (an L2 institution) from 1997 until 2002 pursuant to a previous SCDC policy which allowed him to be grand-fathered into placement at an L2 institution despite the severity of his sentence. However, on April 11, 2003 Johnson was found to be in possession of a computer disc, a disciplinary violation, and after he was found guilty of that violation, he was reassigned to an L3 facility. On January 1, 2004, the South Carolina Department of Corrections ("SCDC") implemented a revision of the classification system, whereby certain inmates with life sentences who were classified as L3 could be advanced to L2 status. Ozmint directed that these inmates could be housed in either L3 institutions or at the Allendale or Kershaw Correctional Institutions, both of which were L2 institu-

tions. Sligh attests that the reason for this limitation on L2 institutions was that these two facilities provided the extra security required to facilitate such a reclassification. Johnson was advanced from L3 to L2 pursuant to this policy, but since the MacDougal Correctional Institution is not an L2 institution to which he can be assigned under the policy, his request to be transferred to MacDougal was denied. (R & R at 3–4.)

In response, Johnson states in his affidavit that the change in the classification system effective January 1, 2004 violated the "ex post facto clause." (Pl. Affidavit at 6.) Moreover, he claims that Sligh committed perjury when he submitted his affidavit regarding Johnson's unlawful possession of a computer disc. *(Id.)* He also claims that the statute under which he was sentenced, S.C.Code Ann. § 16–3–10, is not a penal statute, and that where no punishment is provided, § 17–25–30 requires that his sentence be "maxed out" after ten years. Johnson asserts that he has already served sixteen years over what the statute requires. Moreover, Johnson alleges that the sentencing judge never signed the commitment order giving the Department of Corrections jurisdiction over Johnson, and that he is therefore being illegally detained. (R & R at 7.)

After considering the evidence before him, the Magistrate Judge recommended: (1) that summary judgment be granted as to Johnson's 42 U.S.C. § 1983 claims as they are unsupported by the evidence; (2) that Johnson's unlawful confinement claim be dismissed without prejudice as it is not cognizable in a § 1983 lawsuit;[1] and (3) that Johnson's remaining state law claims be remanded back to state court.

## II. STANDARD OF REVIEW

### A. The Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court reviews *de novo* those portions of the R & R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). After a review of the entire record, the R & R, and Plaintiff's objections, the court finds that the Magistrate Judge correctly summarized the facts and applied the correct principles of law. Accordingly, the R & R is adopted in full and specifically incorporated into this Order.

### B. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). All evidence

---

**1.** The Magistrate also notes that Johnson must first exhaust his state remedies by filing a state post conviction relief action prior to challenging his confinement through federal *habeas corpus* proceedings.

should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). Since Johnson filed his complaint *pro se,* it must be held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Nonetheless, Johnson, in order to withstand summary judgment, must establish the existence of a genuine issue of material fact by presenting evidence on which the jury could reasonably find in his favor. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. "The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient" to create a genuine issue of material fact. *Id.* Furthermore, Johnson's failure to create a genuine issue of material fact on any essential element of his claim will result in summary judgment being entered against him. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Id.* at 327, 106 S.Ct. 2548.

**2.** In his Answer to the Defendant's Reply to Plaintiff's Objections, Plaintiff objected for the first time to the Magistrate's recommendation that his supplemental claim challenging the validly of his continued confinement be dismissed as not cognizable in a § 1983 lawsuit. In his Objections properly filed within ten days of being served with the R & R, Plaintiff did not make an objection to this portion of the R & R. A timely objection is necessary

## III. DISCUSSION

As understood by the court, Johnson's Objections are as follows:[2]

**1. Johnson objects that the Magistrate erred in making the "unwarranted assumption" that Johnson's Complaint "has been unverified." (Objections at 1.)**

█ In footnote 4 on page 2 of the R & R, the Magistrate notes that,

verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991). Plaintiff has filed an unverified Complaint. Therefore, the undersigned has not considered the factual allegations set forth in the unverified Complaint as evidence in issuing a recommendation in this case.

Plaintiff objects that this footnote is inaccurate in that his Complaint *is* verified, and that all material facts as set forth in the Complaint are corroborated by the affidavits of Defendant employees. Upon reviewing the original Complaint filed in State court, the court finds that the Complaint was properly verified by Johnson in the presence of a notary public. Accordingly, the court finds that the Magistrate did err in finding that the Complaint was unverified.

before this court will conduct a de novo review of any portion of the Magistrate's R & R. 28 U.S.C. § 636(b)(1). Accordingly, the court does not consider the objection to the Magistrate's recommendation that Plaintiff's *habeas corpus* challenge be dismissed, as the objection in the Answer was untimely as it was filed more than ten days after service of the R & R.

Although the Magistrate erred, the court finds that the error was harmless. On December 15, 2004, Johnson submitted an affidavit in response to Defendant's motion for summary judgment. In this affidavit, Johnson asserted substantially the same factual allegations as were contained in the Complaint, and added significantly more detail to his claims. It is uncontested that the Magistrate gave proper consideration to the factual allegations contained in this affidavit. As such, even though the Magistrate erred by failing to consider as evidence those factual allegations contained in the verified Complaint, such error was harmless as he gave proper consideration to the same allegations as stated in the affidavit.

■■■ The court further finds that although verified complaints by pro se prisoners are to be considered as affidavits, *conclusory* allegations contained in affidavits about the general conditions of confinement are not in and of themselves sufficient to maintain a constitutional claim. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (courts need not assume the truth of legal conclusions couched as factual allegations); *Larken v. Perkins,* 22 Fed.Appx. 114, 2001 WL 1326077 * 1 (4th Cir. October 29, 2001) (noting that the district court properly found a party's "own, self-serving affidavit[s] containing conclusory assertions and unsubstantiated speculation" insufficient to stave off summary judgment.); *National Enterprises, Inc. v. Barnes,* 201 F.3d 331, 335 (4th Cir.2000) ("Marvin J. Barnes' self-serving affidavit describing the content of the repurchase agreements is not enough to defeat National's motion for summary judgment."); *Ross v. Communications Satellite Corp.,* 759 F.2d 355, at 365 (4th Cir.1985) (holding that unsupported allegations "do not confer talismanic immunity from Rule 56"). Accordingly,

the Magistrate appropriately did not credit the conclusory allegations in Johnson's Complaint and affidavit; e.g., that he was "denied proper nutrition," "treated like an animal," and that "the defendants stipulations [forbidding a transfer to MacDougal Institution] deprive plaintiff of his equal protection." After reviewing the verified Complaint, the affidavits in the record, and the R & R, the court finds that the Magistrate considered and gave appropriate weight to Johnson's factual allegations, and properly disregarded those allegations that were mere legal conclusions.

2. **Johnson objects to the Magistrate's finding that his constitutional rights were not violated by Ozmint's denial of his request to be transferred to MacDougal Correctional Institution. (Objections at 2.)**

■■■ Johnson alleged, citing no supporting law, that the denial of his transfer request was discriminatory and therefore in violation of the equal protection clause and that the application of the new classification policy is an unconstitutional "ex post facto law." The Magistrate found that the denial of Plaintiff's transfer request and the SCDC inmate classification system did not violate Johnson's rights under the equal protection clause of the Constitution, or otherwise violate his constitutional rights. Courts in the Fourth Circuit have long recognized that the Constitution confers no protected liberty interest upon inmates from being placed in a particular prison or even in administrative segregation. *See Ajaj v. Smith,* 108 Fed.Appx. 743, 744, 2004 WL 1663968 (4th Cir.2004) ("To the extent that Ajaj complained about his transfer to Colorado, the Bureau of Prisons has discretion to determine where and under what conditions a federal prisoner is housed. Further, Ajaj did not have a protected liberty interest in remain-

# 696

ing at FCI–Edgefield."); *Slezak v. Evatt,* 21 F.3d 590, 594 (4th Cir.1994) (finding that the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed); *Neal v. Shimoda,* 131 F.3d 818, 828 (9th Cir.1997) ("A prisoner does not have a constitutional right to be housed at a particular institution ... [or] to receive a particular security classification"). So far as the federal constitution is concerned, the placement in a certain institution and custody classification of state prison inmates is a matter for state prison-official discretion whose exercise is not subject to federal procedural due process constraints. The Magistrate therefore correctly recommended that summary judgment be granted as to this claim.

Johnson objects that, under the new SCDC policy, MacDougal is "still a L2 institution and the policy does not stipulate that the plaintiff could not be transfer (sic) back to MacDougal." (Objections at 2.) As such, because the transfer is not forbidden by the policy, Johnson argues that he "was deprived of his equal protection of his equal treatment" when his request for a transfer to that facility was denied. (*Id.*) This objection is not responsive to the Magistrate's recommendation that the denial of the requested transfer does not constitute a violation of Plaintiff's rights under the Constitution. Accordingly, the court finds that the Magistrate did not err in recommending that summary judgment be granted as to Plaintiff's constitutional claim. As the Magistrate noted, Johnson "may or may not have a cause of action with respect to his placement under some state law, policy, or procedure[; however,] the only issue before this court is whether Plaintiff has submitted sufficient evidence to show that his allegations rise to the level of a constitutional violation." (R & R

at 12.) The court agrees that Johnson has not presented evidence of a constitutional violation.

3. **Johnson objects to the Magistrate's finding that, with respect to his complaints concerning the adequacy of his meals and other conditions of his confinement, Johnson "provided no evidence to support these claims or to show a violation of his rights." (R & R at 9.)**

In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin,* 952 F.2d 820, 824 (4th Cir.1991). The Magistrate found that, even considering the evidence in the light most favorable to Plaintiff, Johnson presented no evidence to show that he was not provided with at least the "minimal" necessities required. (R & R at 10.) According to Johnson's own affidavit and Complaint, while he was on "lock-down," he received three meals per day. According to the affidavits of several SCDC employees, these meals were prepared pursuant to SCDC policy and in compliance with USDA nutritional requirements. As the Magistrate noted, Johnson is an inmate in a prison serving a life sentence for murder, he is not a hotel patron. (R & R at 9.) Johnson should expect conditions at such a facility to at times be less than enjoyable. *Hadley v. Peters,* No. 94–1207, 70 F.3d 117, 1995 WL 675990 *8 (7th Cir.1995), cert. denied, 517 U.S. 1111, 116 S.Ct. 1333, 134 L.Ed.2d 484 (1996) ("prisons are not required to provide and prisoners cannot expect the services of a good hotel."). Accordingly, the Magistrate found that Johnson "provided

no evidence to support these claims or to show a violation of his rights," and recommended that Defendant's Motion for Summary Judgment be granted.

Johnson objects that he did provide evidence in support of his claim. Johnson states, "depriving a prisoner of adequate food is a form of corporal punishment … the Eighth Amendment imposes limits on prison officials' power to so deprive a prisoner." (Objections at 2.) As such, Johnson asserts that his affidavit and verified Complaint, which list the allegedly inadequate meals provided during lock-down and assert that they did not provide "the necessary daily … calories," provide sufficient evidence of deprivation of rights to withstand a motion for summary judgment.

The court disagrees. A warden's decision to restrict a prisoner's diet is not a *prima facie* showing of an Eighth Amendment violation. *See Rust v. Grammer*, 858 F.2d 411, 412 (8th Cir.1988) (finding that a restricted diet of two cold sandwiches and water three times a day imposed during a nine day lock-down did not violate the Eighth Amendment). In order for the restriction of food to rise to the level of a constitutional violation, there must be some facts of adverse effects caused by the condition and inadequacy of the food. *Harrison v. Stallings*, 898 F.2d 145, 1990 WL 27233 (4th Cir.1990) (district court dismissed claims as to cold food in insufficient quantities where the plaintiff made no factual allegation of adverse effects caused by the condition of the food); *see Ford v. Board of Managers of New Jersey State Prison* 407 F.2d 937, 939 (3d Cir.1969) (where a short period of solitary confinement for a flagrant breach of discipline in a cell without "wash bowl(s)," "running water," or "water for sanitary purposes" and filled with a "pervasive stench" and where the prisoner's diet was limited to "4 slices of bread and a pint of water 3 times daily," with "one 'full' meal every third day" was found not to be "cruel and unusual punishment"). In this case, it is uncontroverted that the sandwich diet was imposed only during the limited duration of the lock-down. There is no evidence before the court, beside Johnson's conclusory allegations that he experienced "pains of hunger," that Johnson suffered any adverse effects from the restricted diet. Although Johnson correctly states that the Eighth Amendment imposes certain limits on the powers of prison officials, the Eight Amendment does not require "the provision of every amenity needed to avoid mental, physical, or emotional deterioration." *Alberti v. Klevenhagen,* 790 F.2d 1220, 1228 (5th Cir. 1986). Accordingly, the court finds that because the restricted diet was imposed only for a short time, with no resultant long-term adverse effects, it was a constitutionally permissible security measure taken during the pendency of the lock-down. As such, the Magistrate did not err in recommending that Ozmint's motion for summary judgment be granted regarding Johnson's Eighth Amendment claim.

3. **Johnson also objects to the Magistrate's recommendation that the court remand to state court his state law claims under the South Carolina Tort Claims Act.**

Johnson asserts that the court should exercise its supplemental jurisdiction and consider the state law claims on their merits. Defendant agrees that this court has jurisdiction to consider Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), but recognizes that the court has broad discretion under 28 U.S.C. § 1367(c) to decline the exercise of supplemental jurisdiction.

All federal claims over which the court has original jurisdiction have been

dismissed. A court has wide discretion to dismiss or keep a case when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. *Shanaghan v. Cahill,* 58 F.3d 106, 110 (4th Cir.1995), *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988); *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1284 (3d Cir.1993). The doctrine of supplemental jurisdiction "thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Shanaghan,* 58 F.3d at 110.

After considering the factors discussed in *Shanaghan v. Cahill,* the court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over the putative South Carolina Tort Claims Act claims. *Torian v. City of Beckley,* 963 F.Supp. 565, 570 (S.D.W.Va.1997). The court therefore adopts the Magistrate's recommendation that Johnson's state law claims be remanded back to state court for adjudication.[3] Remand of this action will allow the parties to seek a fast track for resolution of these claims at the state level. *See* Rule 40(c), S.C.R.C.P.

## IV. CONCLUSION

For the reasons set forth above, the court adopts the R & R's recommended disposition and denies Johnson's objections. It is therefore **ORDERED** that, adopting in full the recommendations of

---

**3.** In the Magistrate's Order dated August 30, 2004, the parties were previously advised that in the event summary judgment was granted

the Magistrate Judge, Defendant Ozmint's Motion for Summary Judgment is **GRANTED** as to Plaintiff Johnson's federal claims, Johnson's *habeas corpus* claim is hereby **DISMISSED** without prejudice, and Johnson's state law claims are hereby **REMANDED** to the state court for adjudication.

**AND IT IS SO ORDERED.**

on Johnson's federal claims, his remaining state law claims would be remanded back to state court for disposition.